Jordon R. Harlan, Esq. (CA #273978)
**HARLAN HILLIER DIGIACCO LLP**
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: (619) 330-5120
Fax: (619) 839-3895
Email: jordon@hhdlaw.com

Michael P. Hilferty, Esq. (NY # 4719498)
*Pro Hac Vice to be filed*
Tuba J. Farooqui, Esq. (NY # 6101356)
*Pro Hac Vice to be filed*
**WHITE, ROSE, & HILFERTY, P.C.**
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (646) 698-8990
Email: mph@nycjobattorney.com
tfarooqui@nycjobattorney.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CANDACE LOW,** an individual, <br><br> Plaintiff, <br><br> v. <br><br> **BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY, D.B.A. SAN FRANCISCO STATE UNIVERSITY,** <br><br> Defendant. | Case No.: <br><br> **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1. **DISCRIMINATION IN VIOLATION OF 42 USC § 2000E-2** <br> 2. **DISCRIMINATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 ET SEQ.** <br> 3. **RETALIATION IN VIOLATION OF 42 U.S.C. § 2000E** <br> 4. **RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 ET SEQ.** |

Plaintiff, Candace Low (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, White, Rose, & Hilferty, P.C. and Harlan Hillier DiGiacco LLP, hereby submits the following Complaint and Demand for Jury Trial against Defendant Board of Trustees of California State University, D.B.A. San Francisco State University (hereafter referred to as "University" or "Defendant") and upon information and belief, at all times hereinafter mentioned, alleges as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that Defendant discriminated against her based upon her race and sex in violation of Title VII of the Civil Rights Act of 1964 (42 USC § 2000-e), and California Fair Employment and Housing Act (FEHA; Gov. Code, § 12940). Plaintiff seeks damages to redress her financial and emotional damages that Defendant's unlawful discriminatory practices in violation of federal and state statutes inflicted upon her.

## JURISDICTION & VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5. On May 14, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

6. Plaintiff's formal Charge of Discrimination filed with the EEOC asserted the same factual allegations that are asserted in this Verified Complaint.

7. On April 11, 2025, Plaintiff received a Notice of Suit Rights dated April 11, 2025, from the EEOC.

8. Plaintiff timely and properly commenced this action within 90 days of receipt of the Notice of Suit Rights after exhausting all administrative remedies with the EEOC.

///

**PARTIES**

9. At all times, Plaintiff is an individual residing in the State of California, County of San Francisco.

10. Upon information and belief, Defendant does business in San Francisco, California, at 1600 Holloway Ave, San Francisco, CA 94132.

**RELEVANT FACTS**

11. Dr. Low is a female of Chinese descent and identifies as Asian. During her employment, Defendant subjected Dr. Low to unlawful discrimination based upon her race, and sex, as well as retaliation following her engagements in protected activity.

12. Defendant hired Plaintiff on August 27, 2012, as Lecturer and she was later promoted as Adjunct Assistant Professor.

13. Throughout her employment, Plaintiff performed her job duties in an exemplary manner.

14. On March 12, 2015, Dr. Low contacted Co-Chair of the Department of Biology Carmen Domingo, regarding a male student who proposed a project surveying male students about whether they preferred one-nightstands or relationships with Asian women. Dr. Low expressed concerns that the project could constitute sexual harassment. Domingo failed to rehire Dr. Low for the following semester, providing multiple inconsistent reasons for the decision.

15. On March 6, 2017, Professor Kimberly Tanner excluded Dr. Low from a paper and removed her data, while acknowledging 83 other instructors who had contributed to the paper.

16. On August 23, 2018, Chair of the Department of Biology Laura (Kai) Burrus declined to rehire Dr. Low, without explanation.

17. On January 24, 2019, Defendant rehired Dr. Low to teach Biometry.

18. On March 5, 2019, Dr. Low discussed the challenges she faced within the Biology Department with Burrus, who responded that she would "institute some changes that will help bring [her] into the fold a bit more."

19. On March 8, 2019, Dr. Low requested that Burrus provide the criteria used to assign salaries and outline a pathway for improvement. Dr. Low highlighted that her achievements had not

3
COMPLAINT AND DEMAND FOR JURY TRIAL

been acknowledged and requested clearer expectations to avoid inadvertent failure. She also told Burrus "that my interpretation is that he Biology department has been hoping that I quit. That as soon as an opportunity arises where I can be excluded, I will be." Burrus did not respond.

20. On April 10, 2019, Dr. Low followed up with Burrus, seeking clarification on salary ranges and attaching the salary schedule set by the California Faculty Association union, which showed her salary at the bottom range.

21. On April 11, 2019, one of Professor Gretchen LeBuhn's student lab assistants exhibited exceptionally hostile and disruptive behavior toward Dr. Low.

22. On April 13, 2019, Burrus dismissed the union salary schedule as "an interesting document that you have found" and claimed that she "could not pay folks this much" as "it is simply not the reality on our campus."

23. On April 15, 2019, union representative Maureen Loughran informed Dr. Low that the Chair of the Department must advocate for a lecturer to receive a salary increase, subject to the Dean's approval.

24. On May 11, 2019, that same student lab assistant wrote personal criticisms and disparaging notes on her exam for Dr. Low. When Dr. Low reached out to the student to discuss the student's concerns with Burrus, the student refused to meet, claiming there was no need for such a meeting.

25. On August 22, 2019, Burrus hired Laurence Frabotta as a new lecturer at a base salary 11% higher than Dr. Low's salary, despite Frabotta having fewer academic credentials.

26. On September 23, 2021, LeBuhn emailed tenure track faculty seeking someone to fill the Biometry lecturer position following Professor Edward Connor's retirement. When Connor inquired about Dr. Low, who had co-taught the course and covered for him during sabbaticals, LeBuhn dismissed Dr. Low, stating her "scores were low." Instead, LeBuhn and Burrus selected Professor Peter Ingmire, a similarly situated Caucasian male, who declined the position due to his lack of experience.

27. On September 30, 2021, Burrus scheduled a "Meeting to discuss the future of the Biometry course" at a time that conflicted with Dr. Low's teaching schedule. Her exclusion was noted

by Professor Karen Crow and Associate Department Chair of Biology, Professor Blake Riggs.

28. On November 16, 2021, Professor Pleuni Pennings, a Caucasian female, informed Dr. Low that she had volunteered to teach Biometry because no other faculty member expressed interest in the position.

29. On December 15, 2021, Burrus and Petra Dekens denied Dr. Low the "Promoting Equity and Relationships Among Colleagues" fellowship without explanation.

30. On December 22, 2021, Burrus prematurely canceled Dr. Low's Advanced Biometry course and another course taught by a Native American professor, citing low enrollment. However, Burrus had not given Dr. Low time to advertise the course, while similarly situated Caucasian professors were not subjected to similar scheduling issues. When Dr. Low questioned the lack of opportunity to advertise, Riggs provided her with undated and seemingly fabricated correspondence as proof of advertisement.

31. On February 2, 2022, Dr. Low filed a grievance charge to the union, prompting a Title IX investigation into retaliation by LeBuhn for Dr. Low's prior report of discrimination by LeBuhn's husband at a previous job. The grievance also addressed the failure to offer Dr. Low the Biometry position and the premature course cancellations.

32. On May 19, 2022, Dr. Low filed her charge of discrimination with the California Department of Fair Employment and Housing ("CDFEH") regarding Defendant's failure to hire her as Biometry Lecturer and cancellation of her courses.

33. On September 20, 2022, Defendant failed to provide Dr. Low with an adequate remote teaching space by placing her in a room with a gas leak.

34. On October 12, 2022, Riggs acknowledged after reviewing Dr. Low's CV that Defendant had undervalued her. He then lashed out at Dr. Low when she inquired about teaching assignments.

35. On December 1, 2022, Dr. Low overheard male colleagues Jose De la Torre, Kevin Simonin, and Andy Zink making negative comments about a female candidate, calling her "aggressive." Simonin stated, "Well, she's definitely confident." When a student inquired about Dr. Low, De la Torre falsely claimed she was not in the shared office space. When Dr. Low made her

presence known, the men began whispering and went to Simonin's office and closed the door.

36. In December 2022, the University removed eight credits worth of classes from Dr. Low's schedule. Riggs then assigned her to find student instructors with fewer credentials to teach her courses, patronizing her by calling it "extra responsibility," and claiming that, because she wanted her own research lab, he would let her choose the personnel to teach her classes. The decrease in credits resulted in a pay cut.

37. On June 8, 2023, Burrus scheduled a meeting with Dr. Low regarding a student complaint.

38. On June 15, 2023, Dr Low attended the meeting with Burrus, Incoming Chair of the Biology Department Vance Vredenburg, Vice Chair Riggs, Vice Provost of Faculty Affairs Carleen Mandolfo, and Union President Brad Erickson. Dr. Low was not provided with the complaint details, however, she was interrogated about her evaluations and CDFEH investigation. The meeting concluded with the decision to subject Dr. Low with multiple classroom observations by two Associate Chairmen.

39. On July 21, 2023, Dr. Low filed a retaliation complaint with CDFEH following her initial CDFEH complaint.

40. On August 22, 2023, Burrus submitted a negative performance evaluation based on an unsubstantiated student complaint of a "racist incident," frequent tardiness, and being "prickly." The evaluation deviated from Dr. Low's positive performance evaluations in 2021 and 2022. Burrus marked the evaluation as "Needs Improvement" and suggested semesterly classroom observations, now Dean Domingo approved Burrus' evaluation and recommendation. No student complaints were attached or referenced in Dr. Low's evaluations. Similarly situated Caucasian colleague, Professor Tania Pollak, received a similar student complaint but did not receive a negative evaluation or increased scrutiny.

41. On September 12, 2023, Dr. Low filed a union grievance charge challenging the negative performance evaluation.

42. On September 14, 2023, Dr. Low filed another union grievance regarding courses assigned to a new hire, Chelsea Andreozzi, before being offered to her.

43. On September 18, 2023, Pennings informed Dr. Low of an open Biological Data Scientist position.

44. On October 10, 2023, Vredenburg, newly appointed Chair of the Biology Department, conducted a covert investigation into Dr. Low's character without informing her.

45. On October 30, 2023, Dr. Low applied for the Biological Data Scientist position.

46. On December 19, 2023, Lecturer Amichai Lyons sent an email describing Dr. Low as "angry" following a brief interaction at a union social event.

47. On February 2, 2024, Pennings notified Dr. Low by email that she had not been selected for the Biological Data Scientist position. The email conveyed a passive-aggressive tone and offered no explanation for the decision.

48. On May 14, 2024, Dr, Low filed a charge of discrimination and retaliation with the EEOC against Defendant.

49. On August 24, 2024, Julia Smith, a Caucasian female, was hired as lecturer for Fall 2024. Defendant paid Smith a base salary exceeding the maximum rate specified by the union salary schedule. By contrast, Dr. Low's highest monthly rate remained 18% below Smith's maximum rate.

50. In September 2024, Associate Director of the Student Enrichment Office Linda Chen, a female of Chinese descent, complained to Dr. Low about her low salary as a lecturer. Dr. Low informed Chen that a salary analysis conducted by the union revealed a wage disparity between whites and non-whites across all campuses and a gender disparity at the University.

51. On September 17, 2024, Dr. Low filed a union grievance charge regarding the unilateral increase of the enrollment cap for her course after the semester began. Dr. Low was the only professor subjected to such a change.

52. On November 14, 2024, Vredenburg informed Dr. Low that he would conduct semesterly classroom observation before the end of the semester, violating Defendant's policy, which allowed only one observation per contract period and required University President or the lecturer's approval for any additional observations. Vredenburg refused to timely provide Dr. Low the criteria justifying the increased scrutiny.

53. On January 8, 2025, Dr. Low was notified of a Title IX investigation falsely accusing

her of discriminating against a student. The accusation stemmed from misrepresented email correspondence in which Dr. Low informed the student that he could not enter her classroom without proper registration. Similarly situated Caucasian female professors who denied the same student entry were not subjected to investigation.

54. On January 22, 2025, Erickson held a meeting with Tenured Professor James Martel and union field representative David Steel for "the ongoing bullying of Candace Low by her current chair, previous chair, assistant chair and other tenure track faculty." Erickson stated that the bullying "is not going to stop without an intervention." Erickson requested that Dr. Low provide a list of microaggressions she experienced within the department. However, after Dr. Low submitted the list, Erickson failed to follow up with her.

55. On February 25, 2025, the Union Senior Representation Specialist Jason Conwell presented Dr. Low with a settlement offer that compelled her to resign and required her to withdraw her grievance charges against the University.

56. On February 26, 2025, Dr. Low texted Erickson to follow up on the meeting with Mandolfo. Erickson responded, "You are treating the wrong people like enemies. You've burned your bridge with James after he spent hours helping you. Before you respond, take a deep breath and consider if you want to burn your bridge with me."

57. On March 7, 2025, Domingo reprimanded Dr. Low for discussing personal matters in her classes, labeling her behavior as "unacceptable" and demanding an immediate meeting. However, the department had expressly encouraged faculty to share their personal histories to foster relatability with students, emphasizing their circuitous and often challenging nature of their career paths. Consistent with this directive, Dr. Low discussed her experience with plagiarism in the context of social justice, racism, and her work as a data scientist. Despite this, employees outside of Dr. Low's protected class shared comparable personal experiences and were not reprimanded. Domingo failed to provide further clarification on this issue.

58. On March 14, 2025, Riggs shared the schedule for the upcoming fall classes. However, Assistant Professor Jadelys Tonos and Pennings were assigned to the courses Dr. Low could teach and had taught in the past, effectively preventing Dr. Low from teaching for the next academic year.

59. In April 2025, the Union again offered Dr. Low the option to resign, citing the fact that she had not been assigned any courses for the Fall 2025 semester.

60. On April 24, 2025, Defendant released the names of lecturers assigned to work in Fall 2025, Dr. Low was excluded from this list. Due to the reduced workload Dr. Low was at risk of losing her health benefits if she stayed with Defendant but would be permitted to keep her health benefits if she chose to retire.

61. On April 29, 2025, Vredenburg attempted to observe Dr. Low's class again, two weeks before the end of the semester, and in violation of Defendant's policy.

62. Based on the foregoing, Defendant discriminated against Dr. Low based upon her race and gender. Defendant treated Dr. Low differently compared to similarly situated employees with respect to their terms and conditions of employment. These actions of discrimination and retaliation substantially interfered with Dr. Low's employment. As a result of Defendant's unlawful discriminatory and retaliatory practices, Dr. Low suffered significant financial ramifications, humiliation, outrage, and mental anguish, for which Dr. Low claims compensatory damages.

## AS AND FOR A FIRST CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF 42 USC § 2000e-2

### (Title VII Race and Sex Discrimination)

63. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

64. Defendant's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

65. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

66. Plaintiff is a member of protected classes pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2— namely, Plaintiff is a female of Chinese descent and identifies as Asian.

67. Defendant and/or its agents engaged in unlawful practices by discriminating against Plaintiff because of her race and sex. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her race and sex by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated colleagues outside of her protected class. Defendant subjected Plaintiff to disparate treatment by, among other things: denying her full time positions; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; reducing her workload which negatively impacted her pay; issuing false and fabricated negative performance evaluations against Plaintiff; failing to compensate her fairly compared to employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by students outside her protected class.

68. As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

69. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**AS AND FOR A SECOND CAUSE OF ACTION**

**DISCRIMINATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.**

**(CA State Race and Sex Discrimination)**

70. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

71. The California Fair Employment and Housing Act, FEHA; Gov. Code, § 12940(a) provides, in pertinent part: "It is an unlawful employment practice, unless based upon a bona fide

occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decision making, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

72.     Plaintiff is a member of a protected class pursuant to FEHA; Gov. Code, § 12940(a) — namely, Plaintiff is a female of Chinese descent and identifies as Asian.

73.     Defendant and/or its agents engaged in unlawful practices by discriminating against Plaintiff because of her race and sex. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her race and sex by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated colleagues outside of her protected class. Defendant subjected Plaintiff to disparate treatment by, among other things: denying her full time positions; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; reducing her workload which negatively impacted her pay; issuing false and fabricated negative performance evaluations against Plaintiff; failing to compensate her fairly compared to employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by students outside her protected class.

74.     As a direct and proximate result of Defendant's unlawful conduct in violation of the California Fair Employment and Housing Act, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

75.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the California Fair Employment and Housing Act, Plaintiff suffered and continues to

suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

### AS AND FOR A THIRD CAUSE OF ACTION

### RETALIATION IN VIOLATION OF  42 U.S.C. § 2000e

### (Title VII Retaliation)

76. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

78. Title VII of the Civil Rights Act of 1964 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice..." 42 USC § 2000e-3.

79. Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

80. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

81. Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendant's unlawful employment practices throughout her employment.

82. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to Defendant's union and staff and filed multiple complaints with the CDFEH and the EEOC.

83. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by unjustifiably denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; issuing negative performance evaluations against Plaintiff; attempting to subject her to scrutiny by conducting excessive classroom observations; decreasing her course load; and failing to address

and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by students outside her protected class.

84. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

85. As a direct and proximate result of Defendant's unlawful conduct in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

86. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, FEHA; GOV. CODE, § 12940 et seq.

## (FEHA Retaliation)

87. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

88. Under the California Fair Employment and Housing Act, FEHA; Gov. Code, § 12940(h) makes it an unlawful "[F]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

89. Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendant's unlawful employment practices throughout her employment.

90. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff

complained directly to Defendant's union and staff and filed multiple complaints with the CDFEH.

91. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by unjustifiably denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; issuing negative performance evaluations against Plaintiff; attempting to subject her to scrutiny by conducting excessive classroom observations; decreasing her course load; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by students outside her protected class.

92. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

93. As a direct and proximate result of Defendant's unlawful conduct in violation of the California Fair Employment and Housing Act, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

94. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the California Fair Employment and Housing Act, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE** Plaintiff CANDACE LOW demand judgment as follows:

a) A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State of California:

b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

c) An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm,

including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

e) An award of damages for any and all other monetary/non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f) An award for Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and;

g) Such other and further relief as this Court may deem just, proper, and equitable.

**Date: July 3, 2025**                    **HARLAN HILLIER DIGIACCO LLP**

By: */s/ Jordon R. Harlan*
Jordon R. Harlan, Esq. (CA #273978)
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: (619) 330-5120
Fax: (619) 839-3895
Email: jordon@hhdlaw.com

***In association with*:**

**WHITE, ROSE, & HILFERTY, P.C.**

Michael P. Hilferty, Esq. (NY #4719498)
*Pro Hac Vice to be filed*
Tuba J. Farooqui, Esq. (NY #6101356)
*Pro Hac Vice to be filed*
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (646) 698-8990
Email: mph@nycjobattorney.com
tfarooqui@nycjobattorney.com

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

**Dated: July 3, 2025**                         **HARLAN HILLIER DIGIACCO LLP**

*/s/ Jordon R. Harlan*
Jordon R. Harlan, Esq. (CA #273978)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE LOW,<br><br>                    Plaintiff,<br><br>    vs.<br><br>BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY, D.B.A. SAN FRANCISCO STATE UNIVERSITY,<br><br>                    Defendant. | **VERIFICATION** |

**PLAINTIFF CANDACE LOW**, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1.  I am the Plaintiff in the above-captioned matter.

2.  I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed: __San Francisco__, California
          July _02_, 2025

_____
CANDACE LOW